AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

LG GSM LM-V405UA_DS V40 THINQ
(IMEI: 359582091726822) LOCATED AT PREMISES OF
U.S. DEPARTMENT OF HOMELAND SECURITY

)
)
)
)
)
)

Case No.

1:19MJ -452

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
LG GSM LM-V405UA_DS V40 THINQ (IMEI: 359582091726822) LOCATED AT PREMISES OF U.S. DEPARTMENT OF HOMELAND SECURITY

located in the _____Southern_____ District of _____Ohio_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2252(a)(2)(B) and 2252A(a)(2) | Distribution and Receipt of Child Pornography |
| 18 U.S.C. 2252(a)(4)(B) and 2252A(a)(5)(B) | Possession of Child Pornography |

The application is based on these facts:

See Attachment B

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Christopher Wallace, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/10/19

City and state: Cincinnati, Ohio

_____
*Judge's signature*

Honorable Karen L. Litkovitz
*Printed name and title*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH | ) | TO BE FILED UNDER SEAL |
| OF THE LG GSM LM-V405UA_DS | ) | |
| V40 THINQ (IMEI:359582091726822) | ) | |
| LOCATED AT PREMISES OF U.S. | ) | |
| DEPARTMENT OF HOMELAND | ) | |
| SECURITY | ) | |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

1.      I, Special Agent (SA) Christopher Wallace, being duly sworn under oath, do hereby depose and state:

2.      I am a Special Agent with Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), and I have been so employed since May of 2005. As part of my daily duties as an HSI agent, I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the distribution, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252(a) and 2252A. I have received training in the area of child pornography and child exploitation. I have additionally had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. I have also participated in the execution of numerous search warrants, a number of which involved child exploitation and/or child pornography offenses.

3.      This affidavit is being made in support of an application for a search warrant for the LG GSM LM-V405UA_DS V40 THINQ (IMEI:359582091726822) mobile phone, henceforth referred to as the **SUBJECT DEVICE,** which was seized on June 5, 2019, from Jimmy Brown at Brown's residence located at 4694 Tealtown Road in Milford, Ohio by law enforcement authorities. The **SUBJECT DEVICE** is currently located at the Department of Homeland

Security, 9875 Redhill Drive, Blue Ash, Ohio, 45242, and as more fully described in Attachment A.

4.     The purpose of this search warrant request is to search and seize evidence stored on electronic media, more particularly described in Attachment B, which is considered to be violations of 18 U.S.C. §§ 2252(a)(4)(B) and 2252A(a)(5)(B), which make it a crime to possess child pornography and access child pornography with intent to view it, and violations of 18 U.S.C. §§ 2252(a)(2)(B) and 2252A(a)(2), which make it a crime to receive and distribute child pornography.     The items to be searched for and seized are described more particularly in Attachment B hereto.

5.     The statements contained in this Affidavit are based in part on my personal investigation of this matter and on information provided to me by other law enforcement agents. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have elected to set forth only those facts that I believe are necessary to establish probable cause to search for evidence of violations of 18 U.S.C. §§ 2252 and 2252A which is believed to be present within stored data located on the **SUBJECT DEVICE.**

6.     As a result of the instant investigation described more fully below, there is probable cause to believe that evidence, fruits, and instrumentalities of violations of federal law, including 18 U.S.C. §§ 2252 and 2252A, are present within the stored data located on the **SUBJECT DEVICE**.

## RELEVANT STATUTES

7.     18 U.S.C. § 2252(a)(2)(B) states that it is a violation for any person to knowingly receive or distribute any visual depiction using any means or facility of interstate or foreign

2

commerce or that has been mailed, shipped, or transported in or affecting interstate or foreign commerce or which contains materials which have been mailed or so shipped or transported by any means, including by computer, or to knowingly reproduce any visual depiction for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or through the mail if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

8.      18 U.S.C. § 2252A(a)(2) states that it is a violation for any person to receive or distribute – (A) any child pornography that has been mailed, or using any means or facility of interstate or foreign commerce, shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; and (B) any material that contains child pornography that has been mailed, or using any means or facility of interstate or foreign commerce, shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

9.      18 U.S.C. § 2252(a)(4)(B) states that it is a violation for any person to knowingly possess, or knowingly access with the intent to view, one or more matters which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

10.     18 U.S.C. § 2252A(a)(5)(B) states that it is a violation for any person to knowingly possess, or knowingly access with intent to view, any book, magazine, periodical, film, videotape, computer, disk, or any other material that contains an image of child pornography that has been

3

mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

11.     For purposes of these statutes, the term "sexually explicit conduct" is defined in 18 U.S.C. § 2256(2) as:

a.     "Actual or simulated –

    i.    Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
    ii.    Bestiality;
    iii.    Masturbation;
    iv.    Sadistic or masochistic abuse; or
    v.    Lascivious exhibition of genitals or pubic area of any person."

## BACKGROUND INFORMATION

### Definitions

12.     **"Child Pornography"** includes the definition in 18 U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct)."**Visual depictions**" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. § 2256(5).

13.     **"Child Erotica"** means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

14. **"Minor"** means any person under the age of eighteen years. See 18 U.S.C. § 2256(1).

15. **"Sexually explicit conduct"** means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person. See 18 U.S.C. § 2256(2).

16. **"Internet Service Providers"** or **"ISPs"** are commercial organizations which provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers, including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment. ISPs can offer various means by which to access the Internet including telephone based dial-up, broadband based access via a digital subscriber line (DSL) or cable television, dedicated circuits, or satellite based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth, which the connection supports. Many ISPs assign each subscriber an account name such as a user name or screen name, an e-mail address, and an e-mail mailbox, and the subscriber typically creates a password for the account. By using a computer equipped with a telephone or cable modem, the subscriber can establish communication with an ISP over a telephone line or through a cable system, and can access the Internet by using his or her account name and password.

17. An **"Internet Protocol address"**, also referred to as an **"IP address"**, is a unique numeric address that computers or electronic devices use in order to communicate with each other on a computer network utilizing the Internet Protocol (IP) standard. Every computer or device connected to the Internet is referenced by a unique IP address. An IP address can be thought of as the equivalent to a street address or a phone number, just as each street address and phone number uniquely identifies a building or telephone. IP addresses are composed of four sets of digits known

5

as "octets," ranging in value from 0-255, separated by decimal points. An example of an IP address is 192.168.10.102. There are two types of IP addresses; static and dynamic. A static address is permanently assigned to a particular device and as a practical matter never changes. A dynamic address provided by an Internet service provider to a client computer is valid only for the duration of the session that the client computer is connected to the Internet (or other network).

18.     A network "**server**," also referred to as a "**host**," is a computer system that has been designated to run a specific server application or applications and provide requested services to a "client" computer. A server can be configured to provide a wide variety of services over a network, including functioning as a web server, mail server, database server, backup server, print server, FTP (File Transfer Protocol) server, DNS (Domain Name System) server, to name just a few.

19.     A "**client**" is the counterpart of a server or host. A client is a computer system that accesses a remote service on another computer by some kind of network. Web browsers (like Internet Explorer or Safari) are clients that connect to web servers and retrieve web pages for display. E-mail clients (like Microsoft Outlook or Eudora) retrieve their e-mail from their Internet service provider's mail storage servers.

20.     "**Domain Name**" refers to the common, easy to remember names associated with an Internet Protocol address. For example, a domain name of "www.usdoj.gov" refers to the Internet Protocol address of 149.101.1.32. Domain names are typically strings of alphanumeric characters, with each level delimited by a period. Each level, read backwards – from right to left – further identifies parts of an organization. Examples of first level or top-level domains are typically ".com" for commercial organizations, ".gov" for the governmental organizations, ".org" for organizations, and, ".edu" for educational organizations. Second level names will further identify the organization, for example "usdoj.gov" further identifies the United States

6

governmental agency to be the Department of Justice. Additional levels may exist as needed until each machine is uniquely identifiable. For example, "www.usdoj.gov" identifies the World Wide Web server located at the United States Department of Justice, which is part of the United States government. The Domain Name System, also referred to DNS, is a system of servers connected to each other using a common system of databases that resolve a particular domain name, such as "www.usdoj.gov," to its currently assigned IP address (*i.e.,* 149.101.1.32), to enable the follow of traffic across the Internet.

21.    **"Log Files"** are records automatically produced by computer programs to document electronic events that occur on computers. Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and system errors. Logs are often named based on the types of information they contain. For example, web logs contain specific information about when a website was accessed by remote computers; access logs list specific information about when a computer was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

22.    **"Hyperlink"** (often referred to simply as a "link") refers to a navigation element in a web page or document that automatically brings the referred information (a.k.a. "resource") to the user when the navigation element is selected by the user. Hyperlinks are part of the foundation of the World Wide Web, but are not limited to a website for HTML.

23.    **"Website"** consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-Text Transport Protocol (HTTP).

24.    **"Uniform Resource Locator"** or **"Universal Resource Locator"** or "URL" is the unique address for a file that is accessible on the Internet. For example, a common way to get to

7

a website is to enter the URL of the website's home page file in the Web browser's address line. Additionally, any file within that website can be specified with a URL. The URL contains the name of the protocol to be used to access the file resource, a domain name that identifies a specific computer on the Internet, and a pathname, a hierarchical description that specifies the location of a file in that computer.

25. "**Peer-to-Peer**" (P2P) file sharing is a method of communication available to Internet users through the use of special software. Computers linked together through the Internet using this software form a network that allows for the sharing of digital files between users on the network. A user first obtains P2P software, which can be downloaded from the Internet. In general, P2P software allows the user to set up file(s) on a computer to be shared with others running compatible P2P software. A user obtains files by opening the P2P software on the user's computer and conducting a search for files being shared on the network.

26. The terms "**records**", "**documents**", and "**materials**", as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

Characteristics of Collectors of Child Pornography

27. Based upon my knowledge, experience, and training in child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the collection of child pornography (hereafter "collectors"):

a. Collectors may receive sexual stimulation and satisfaction from contact with children, or from having fantasies of children engaged in sexual activity or suggestive poses, or from literature describing such activity.

b. Collectors may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Collectors typically use these materials for their own sexual arousal and gratification. Collectors often have companion collections of child erotica. Child erotica are materials or items that are sexually suggestive and arousing to pedophiles, but which are not in and of themselves obscene or pornographic. Such items may include photographs of clothed children, drawings, sketches, fantasy writings, diaries, pedophilic literature and sexual aids.

c. Collectors who also actively seek to engage in sexual activity with children may use these materials to lower the inhibitions of a child they are attempting to seduce, convince the child of the normalcy of such conduct, sexually arouse their selected child partner, or demonstrate how to perform the desired sexual acts.

d. Collectors almost always possess and maintain their "hard copies" of child pornographic images and reference materials (*e.g.,* mailing and address lists) in a private and secure location. With the growth of the Internet and computers, a large percentage of most

collections today are in digital format. Typically these materials are kept at the collector's residence for easy access and viewing. Collectors usually place high value on their materials because of the difficulty, and legal and social danger, associated with acquiring them. As a result, it is not uncommon for collectors to retain child pornography for long periods of time, even for years. Collectors often discard child pornography images only while "culling" their collections to improve their overall quality.

e.      Collectors also may correspond with and/or meet others to share information and materials. They may save correspondence from other child pornography distributors/collectors, including contact information like email addresses, and may conceal such correspondence as they do their sexually explicit material.

f.      Collectors prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

g.      Subscribers to websites that are primarily designed to provide child pornography have a strong likelihood of being collectors of child pornography. This high degree of correlation between subscription and collection behavior has been repeatedly confirmed during several recent nationwide law enforcement initiatives.

<u>Use of Computers and the Internet with Child Pornography</u>

28.     Computers and computer technology have revolutionized the way in which child pornography is produced, distributed, and utilized. It has also revolutionized the way in which child pornography collectors interact with each other, as well the methods that individuals will use to interact with and sexually exploit children. Computers serve four functions in connection with child pornography: production; communication; distribution and storage.

10

a.    **Production**: Pornographers can now produce both still and moving images directly from a common video camera. The camera is attached, using a cable, directly to the computer using a device called a video capture board. This device turns the video output into a form that is usable by computer programs. The output of the video camera can be stored, manipulated, transferred or printed directly from the computer. The captured image can be edited (*i.e.,* lightened, darkened, cropped, digitally enhanced, *etc.*) with a variety of commonly available graphics programs. The producers of child pornography can also use scanners to convert hard-copy photographs into digital images.

b.    **Communication**. Previously, child pornography collectors had to rely on personal contact, U.S. mail, and telephonic communications in order to sell, trade, or market pornography. Today most communications associated with the trafficking of child pornography occur via the obscurity and relative anonymity of the Internet. A device known as a modem allows any computer to connect to the Internet via telephone lines or broadband Internet connections. Once connected to the Internet, individuals search for and/or offer to distribute child pornography in a wide variety of ways. Many individuals congregate in topic-based Internet chat rooms implicitly or explicitly dedicated to child pornography. Online discussions in these chat rooms are usually done via instant message (or "IM"), and individuals may then establish one-on-one chat sessions involving private messages (or "PMs"), visible only to the two parties, to trade child pornography. These child pornography images may be attachments to the PMs, or they may be sent separately via electronic mail between the two parties. Pedophile websites communicate advertisements for the sale of child pornography, and individuals may order child pornography from these websites using email or send order information from their web browser (using HTTP computer language). Some individuals communicate via Internet Relay Chat (IRC) to discuss and trade child

11

pornography images.  It is not uncommon for child pornography collectors to engage in mutual validation of their interest in such material through Internet-based communications.

       c.    **Distribution**.  Computers and the Internet are the preferred method to distribute child pornography.  As discussed above, such images may be distributed via electronic mail (either as an attachment or embedded image), or through instant messages as attachments.  Child pornography is regularly downloaded from servers or Usenet newsgroups via a method known as FTP (file transfer protocol).  Child pornography images are also distributed from websites via client computers web browsers downloading such images via HTTP (Hyper Text Transfer Protocol).  Peer-to-peer networks such as LimeWire and Gnutella are an increasingly popular method by which child pornography images are distributed over the Internet.

       d.    **Storage**.  The computer's capability to store images in digital form makes it an ideal repository for pornography.  A single floppy disk can store dozens of images and hundreds of pages of text.  The size of computer hard drives used in home computers has grown tremendously within the last several years.  Hard drives with the capacity of two hundred (200) gigabytes are not uncommon.  These drives can store thousands of images at very high resolution.  Remote storage of these images on servers physically removed from a collector's home computer adds another dimension to the equation.  It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country.  Once this is done, there is no readily apparent evidence at the scene of the crime.  Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

## KIK MESSENGER APPLICATION

      29.    The Kik Messenger application is primarily a social media mobile device platform designed and managed by Kik Interactive Incorporated, a Waterloo, Canada based company, for

the purpose of mobile messaging and communication. To use this application, a user downloads the mobile messaging application via an applications service such as the Google Play Store, Apple iTunes, or other similar mobile application provider. Once downloaded and installed, the user is prompted to create an account and a username. This username will be the primary account identifier. The user also has a display name, which will be what other users initially see when transmitting messages back and forth. As part of the account creation process, Kik users are asked to supply a valid email address, create a password, provide an optional date of birth, and user location. The user also has the option of uploading a "profile avatar" that is seen by other users. Once the Kik user has created an account; the user is able to locate other users via a search feature. The search feature usually requires the user to know the intended recipient's username. Once another user is located or identified, Kik users can send messages, images, and videos between the two parties.

30.     Kik Messenger also allows users to create chat rooms, of up to 50 people, for the purpose of communicating and exchanging images and videos. These rooms are administered by the creator who has the authority to ban and remove other users from the created room. According to Kik Messenger, more than 40% of the Kik users chat in "groups" and approximately 300,000 new groups are created every day. These groups are frequently created with a "hashtag" allowing the group or chat to be identified more easily. Once the group or chat is created Kik users have the option of sharing the "link" with all of their contacts or anyone they wish.

## FACTS SUPPORTING PROBABLE CAUSE

31.     The HSI Cyber Crimes Center, Child Exploitation Investigations Unit (C3 CEIU) received a referral from Royal Canadian Mounted Police (RCMP). In December 2018, KIK Interactive, Inc. provided reports of the distribution of Child Sexual Abuse Material (CSAM) that

occurred on the KIK messaging application to the RCMP. The RCMP filtered the content and provided referrals relating to KIK users geographically located in the United States to C3 CEIU. C3 CEIU received, from the RCMP, KIK user information as well as content sent by each of the users. C3 CEIU filtered the KIK user information to determine each user's geographical location based upon the user's IP address. C3 CEIU then disseminated leads to HSI domestic field offices.

32.     An individual with the username, "tommylikesit69" was identified by Kik to have uploaded one child pornography image on December 24, 2018, from the IP address 184.54.140.209 (henceforth referred to as the TARGET IP ADDRESS). Open source researched conducted by C3 CEIU determined that the TARGET IP ADDRESS is operated by Charter Spectrum Communications.

33.     On February 27, 2019, HSI Cincinnati sent an administrative subpoena to summons to Charter Spectrum Communications seeking subscriber information for the TARGET IP ADDRESS. Charter Spectrum Communications thereafter provided a response stating that the subject subscriber account was assigned to a Jim Brown at 4694 Tealtown Road, Milford, Ohio 45150.

34.     On June 4, 2019, SA Christopher Wallace and SA Kimberly Wallace traveled to 4694 Tealtown Road in Milford, Ohio. SA Wallace knocked at the door of 4694 Tealtown Road. Jimmy Brown answered the door and SA Christopher Wallace identified himself as a Special Agent with HSI and asked Brown if he (Jimmy Brown) was willing to answer questions inside the residence. Brown indicated that the he (Jimmy Brown) preferred to speak outside.

35.     During the interview, SA Christopher Wallace asked Brown for consent to forensically examine Brown's current mobile phone (**SUBJECT DEVICE**). Brown verbally

consented to the forensic examination and also completed and signed an HSI Computer Forensics Consent Worksheet.

36.    SA Christopher Wallace then commenced a file system extraction of the **SUBJECT DEVICE** with the Cellebrite UFED4PC application. SA Christopher Wallace began viewing the data and discovered an image of CSAM labeled "imgcache_screen.0_embedded_19.jpg". The CSAM image was of a single prepubescent female child facing away from the camera and crouched down on the floor on her knees. The child is naked from the waist down. The child's anus and vagina are spread open by the child's hands. A whip is also placed on the child's buttocks. Overlaid on the image was text that read, "all ages angels WWW.DEFO.ML". SA Christopher Wallace then halted the examination of the data from the **SUBJECT DEVICE** in favor of obtaining a federal search warrant.

37.    SA Christopher Wallace showed the CSAM image to Brown and asked Brown why that image was on Brown's mobile phone. Brown replied, "I don't know."

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

38.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

39.    *Nature of examination:*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **SUBJECT DEVICE** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might

expose many parts of the **SUBJECT DEVICE** to human inspection in order to determine whether it is evidence described by the warrant.

40.     *Manner of execution:*  Because the warrant seeks only permission to examine a device already in law enforcement's possession, the execution of the warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

41.     Based on the foregoing, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 2252(a)(2)(B) and 2252A(a)(2) (distribution and receipt of child pornography), and Title 18, United States Code, Sections 2252(a)(4)(B) and 2252A(a)(5)(B) (possession of child pornography) may be located on the **SUBJECT DEVICE,** as further described in Attachment A. I therefore respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

Respectfully submitted,

Christopher Wallace
Special Agent
Homeland Security Investigations

Sworn and subscribed before me this _/0_ day of
June, 2019, at Cincinnati, Ohio.

HONORABLE KAREN L. LITKOVITZ
UNITED STATES MAGISTRATE JUDGE

16

## ATTACHMENT A

The property to be searched is:

LG GSM LM-V405UA_DS V40 THINQ (IMEI:359582091726822) mobile phone (**SUBJECT DEVICE**).

The **SUBJECT DEVICE** IS currently stored in a secure facility in the HOMELAND SECURITY INVESTIGATIONS OFFICE located at 9875 REDHILL DRIVE, BLUE ASH, OHIO 45242

This warrant authorizes the forensic examination of **SUBJECT DEVICE** for the purpose of identifying the electronically stored information described in Attachment B.



## ATTACHMENT B

All records on the **SUBJECT DEVICE** described in Attachment A that relate to violations of 18 U.S.C. §§ 2252(a)(4)(B), 2252A(a)(5)(B), 2252(a)(2), and 2252A(a)(2) (possession, receipt, and distribution of child pornography), including but not limited to the following:

    a.    Any visual depictions and records related to the possession, receipt, and distribution of child pornography;

    b.    Any visual depictions of minors;

    c.    Any Internet history indicative of searching for child pornography;

    d.    Any Internet communications (including email, social media, and online chat programs) with others in which child exploitation materials and offenses are discussed and/or traded, and any contact / identifying information for these individuals;

    e.    Any Internet communications (including email, social media, and online chat programs) with minors, and any contact / identifying information for these minors;

    f.    Evidence of utilization of email accounts, social media accounts, online chat programs, and Peer-to-Peer file sharing programs, including any account / user names;

    g.    Evidence of utilization of the name "tommylikesit69" and any aliases or fictitious names;

    h.    Any information related to Internet Protocol (IP) addresses and Wi-Fi accounts accessed by the **SUBJECT DEVICE**;

    i.    Evidence of user attribution showing who used or owned the **SUBJECT DEVICE** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

    j.    Any information or evidence concerning the use or presence of Kik to include, but not limited to, messages, content, images, communications, registration information, account information, and usage information.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage and any photographic form.

The authorization includes the seizure and search of electronic data to include deleted data, remnant data and slack space.

**ATTACHMENT C**

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. § 2252(a)(4)(B) | Possession of Child Pornography |
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of Child Pornography |
| 18 U.S.C. § 2252(a)(2)(B) | Receipt and Distribution of Child Pornography |
| 18 U.S.C. § 2252A(a)(2) | Receipt and Distribution of Child Pornography |